**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| **JANINE C. DAVIS** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **CASE NO:** |
| **v.** | ) | |
| | ) | |
| **FISK UNIVERSITY** | ) | **JURY DEMAND** |
| | ) | |
| **Defendant.** | ) | |

## COMPLAINT

Plaintiff Janine C. Davis ("Plaintiff" or "Ms. Davis") files this Complaint against Fisk University ("Defendant" or "Fisk"), showing the Court as follows:

### Introduction

1. This is an employment action arising from Plaintiff's unlawfully motivated termination by Defendant. During her employment, Ms. Davis observed multiple incidents of biased and unfair practices regarding the treatment of the Fisk Women's Basketball League when compared to the Men's Basketball League. On multiple occasions, Ms. Davis alerted agents of Fisk of the lack of support, supplies, and funding for her female students. Ms. Davis stood against any form of gender-based discrimination and made her employer aware of the discriminatory actions by reporting the treatment towards the Women's team and coaches. Additionally, in January 2022, Ms. Davis alerted Fisk University of her pregnancy. Growing tired of the continual reports and unwillingness to work with Ms. Davis during her pregnancy, Fisk University ended Ms. Davis' employment on March 3,

2022, for false and pretextual reasons. Defendant's actions violated various federal and state laws that prohibit gender/ pregnancy discrimination and retaliation on the basis of sex.

**Parties**

2.   Ms. Davis is a former employee of Defendant. She is a citizen and resident of Davidson County, Tennessee.

3.   Fisk University, is a Tennessee based Non-Profit Corporation with its principal place of business in Davidson County, TN. Defendant may be served through its registered agent, Capitol Corporate Services, Inc. 992 Davidson Dr, Ste. B Nashville, TN 37205.

**Jurisdiction and Venue**

4.   This Court has jurisdiction under 28 U.S.C. § 1331 and § 1332. Venue is proper under 28 U.S.C. §1391. All facts giving rise to this case happened within the jurisdiction of this Court. Plaintiff has received her Notice of Suit Rights from the EEOC and files this lawsuit timely.

5.   This is an action for all available economic damages, compensatory damages, declaratory relief, equitable relief, and injunctive relief under Title VII of the Civil Rights Act ("Title VII"), as amended by the Pregnancy Discrimination Act ("PDA").

**Facts**

6.   Fisk University is a highly ranked historically black college and is the oldest institution of higher learning in Nashville, Tennessee – dating back to 1866.

7.   Ms. Davis is an African American (Black) female and Alumni of Fisk University.

8.   Ms. Davis began working as the Women's Head Basketball Coach for Defendant on or about July 22, 2019.

9.  After accepting the employment offer from Defendant, Ms. Davis relocated from New York, NY to Nashville, TN. Defendant assured Ms. Davis that she would receive all necessary support, backing, and resources to facilitate the team's success, as well as her success in the role of Women's Head Basketball coach.

10. As part of her relocation process, Fisk offered Ms. Davis on-campus employee housing but required payment for such accommodations. Ms. Davis was required to pay $950.00 per month for on-campus employee housing. This amount was substantially higher than what was required of several of her male counterparts; including the Men's Head Basketball Coach, who was not required to pay for on-campus employee housing.

11. Mr. Kenny Anderson is an African American (Black) male and the Men's Head Basketball Coach.

12. Early in 2020, agents of Fisk assigned additional roles and responsibilities to Plaintiff's workload. Ms. Davis now held the responsibilities of three separate roles within Fisk – Women's Head Basketball Coach, Director of Athletic Operations, and the COVID-19 Response Representative for the Athletic Department.

13. After assignment to these additional roles, Ms. Davis quickly saw a rising demand of her time and energies from her employer. Additionally, Ms. Davis became aware that Mr. Anderson received a much higher salary than her and was not required to pay for on-campus employee housing. Subsequently, Ms. Davis brought her complaints regarding the pay inequities when compared to her male counterparts to Dr. Glover, and requested a salary increase in the Spring 2021 semester.

14. Dr. Larry Glover is an African American (Black) male and during Ms. Davis' tenure the Athletic Director and her direct supervisor.

15. In response to Plaintiff's pay inequity complaints, Dr. Glover alerted Ms. Davis that "due to the University's budget" there was no additional funds to provide her with a pay raise. Dr. Glover did not investigate or provide Ms. Davis any opportunity to discuss her concerns of pay inequities further. Shortly thereafter Plaintiff became aware that Dr. Glover provided the Sports Information Director a raise to his salary upon request.

16. Scott Wallace is an African American (Black) male and during Ms. Davis' tenure the Sports Information Director.

17. After learning of Mr. Wallace's salary increase, Plaintiff once again brought her pay inequity complaints to Dr. Glover. Plaintiff was told by Dr. Glover that he could not provide her with a raise with no explanation as to why. Further, Dr. Glover directed Plaintiff to stop bring up the matter.

18. By the end of the Spring 2021 semester, Plaintiff's complaints regarding perceived pay inequities when compared to her male counterparts was never investigated or resolved by agents of Defendant.

19. As a result of seeing no resolution or investigation to her complaints, Ms. Davis began questioning whether she would return to her multiple roles at Fisk for the Fall 2021 semester. In July 2021, Ms. Davis attended the Gulf Coast Athletic Conference ("GCAC") in New Orleans, LA with several employees/ agents of Fisk. At this conference, Ms. Davis saw a shift in the demeanor and attitude of many of her colleagues from Fisk. Plaintiff felt alienated and treated as a pariah by many individuals that she previously felt comfortable around – including Dr. Glover. As a result, Ms. Davis decided to resign from Fisk University. On July 29, 2021, Ms. Davis sent her resignation notice to Dr. Glover "Effective immediately".

20. After news of Plaintiff's pay inequity concerns and subsequent resignation became known to several Alumni and parents of student athletes at Fisk, "calls…to rehire Ms. Davis" were made to President Newkirk.

21. President Newkirk responded to these requests from Alumni and parents of student athletes by requesting Ms. Davis rescind her resignation with the promise of a pay raise and further assurances that she would receive all necessary support, backing, and resources to facilitate the team's success, as well as her success in the role of Women's Head Basketball coach.

22. On August 5, 2021, Ms. Davis rescinded her resignation and returned to Fisk University for the Fall 2021 semester as the Women's Head Basketball Coach with free on-campus employee housing, and an increase of her salary "by $5,942.00". Bringing her new annual salary "to $55,940.00", effective "October 16, 2021". This amount was still less than that of several of her male counterparts in the Athletic Department.

23. Upon Plaintiff's return in the Fall 2021 semester, she began to complain to Dr. Glover about discrepancies in the funding, resources, and supplies the women's basketball team received in comparison to the men's basketball team. Plaintiff explained that the women's basketball team were being required to wear uniforms that the men's basketball team used from two school years prior. Additionally, the amount of funding and resources given for "away games", or travel was substantially less than the stipend provided to the men's basketball team. And on several occasions, Plaintiff would be required to pay out of pocket for the meals/ travel expenses of her student athletes. Furthermore, many parents of student athletes were having to donate funds, sports equipment, or other items for the women's basketball team to have proper training gear – a necessity never required of the men's basketball team.

24. In response, Dr. Glover would disregard, or shrug-off Plaintiff's concerns and directed her to speak to Mr. Anderson to have his "Nike contract" provide a quote for the necessary uniforms, gear, and supplies since it could be provided at a "discounted rate". In response, Plaintiff emailed Mr. Anderson all the sizes and necessary items for the women's basketball team.

25. From September 2021 to Plaintiff's termination, Mr. Anderson failed to obtain or provide any quote to Ms. Davis for the uniforms, gear, and supplies that the women's basketball team needed, despite several follow-up requests from Plaintiff to Mr. Anderson and Dr. Glover.

26. In or about November 2021, Ms. Davis secured a quote for the items needed for the women's basketball team from a separate vendor and presented it to Dr. Glover – who chastised Ms. Davis for not providing a quote based on Mr. Anderson's "Nike contract". Ms. Davis responded that Mr. Anderson would not provide her a quote despite multiple requests and follow-ups, and that the girls were desperate for the items provided on the quote. Additionally, Ms. Davis complained to Dr. Glover that the women's basketball team and coaches were being treated in a biased and unfair way, that there were never any problems with the men's basketball team securing their uniforms and equipment for seasons. Dr. Glover dismissed Plaintiff's concerns and said he would speak to Mr. Anderson.

27. In response to Plaintiff's allegations of unfair and biased treatment of the women's basketball team, agents of Fisk did not conduct any investigation or look further into Ms. Davis' complaints.

28. After several weeks of no follow-up from Dr. Glover, Plaintiff presented a second quote for the items needed for the women's basketball team. Dr. Glover declined Plaintiff's second quote and by the end of the 2021 year, the women's basketball team still did not have the items required. As a result, prior to the 2021 winter break, a parent of a student athlete generously donated partial uniforms ("shooting shirts") for the women's basketball team.

29. Shortly after returning from winter break, in or about the middle of January 2022, Ms. Davis alerted Dr. Glover that she was pregnant and expected to deliver in July 2022.

30. After this disclosure, Dr. Glover's demeanor changed towards Plaintiff. Dr. Glover began speaking to Plaintiff in antagonistic and hostile tones. He was short in all conversations and Plaintiff felt shunned by Dr. Glover.

31. At the beginning of February 2022, Plaintiff once again questioned Dr. Glover about the status of the uniforms and supplies. In particular, she requested if Fisk would pay for the student athlete "warmup" uniform – a uniform the men's basketball team was provided without any issues. Dr. Glover responded that he would "look into it".

32. Prior to Plaintiff alerting Defendant of her pregnancy or any of the complaints regarding the disparities between the women's and men's basketball team and coaches, she was not on under any "performance improvement counseling" or "progressive discipline process", nor had she received any "progressive discipline form(s)".

33. On or about February 22, 2022, an email was sent to Dr. Glover from the parent of a student athlete on the women's basketball team regarding Ms. Davis and the disapproval of her coaching style and decisions regarding the women's team. This email was then forwarded to Ms. Davis by Dr. Glover who informed her to provide a statement. Dr. Glover did not

alert Ms. Davis that she would be placed under any "performance improvement counseling", "progressive discipline process", nor would she receive a "progressive discipline form" as a result of the February 22, 2022 email.

34. On February 24, 2022, Plaintiff provided Dr. Glover a response statement which vehemently denied all the allegations against her.

35. From February 22, 2022 – March 2, 2022, Plaintiff was never informed that any investigation was being performed into the February 22, 2022 email.

36. From February 22, 2022 – March 2, 2022, Plaintiff was not placed on any "performance improvement counseling" or "progressive discipline process", nor had she received any "progressive discipline form(s)".

37. On March 2, 2022, Dr. Glover, along with agents of Human Resources ("HR"), terminated Ms. Davis' employment due to the February 22, 2022 email. Ms. Davis challenged the termination decision and once again pointed out the disparate treatment between herself and Mr. Anderson as he had received multiple email complaints from parents of student athletes with no call for his termination – nor was he ever pregnant.

38. HR and Dr. Glover disregarded Ms. Davis' assertions and stated the termination decision would remain in effect.

39. Any now-claimed basis for Plaintiff's termination is false and a pretext for discrimination and retaliation.

40. Plaintiff suffered intolerable work conditions, intimidation, and hostility. Defendant's failure to exercise effective or reasonable care to provide Plaintiff a workplace free from harassment, retaliation, intimidation, and other harms resulted in harm to Plaintiff and caused her employment to end.

41.   Defendant treated Ms. Davis different in the terms, conditions, and privileges and benefits of employment than it treated other similarly situated male employees, and the adverse treatment suffered by Ms. Davis was based on her sex.

42.   As a result of the conduct described herein, Plaintiff has lost income and other privileges and benefit of employment; suffered embarrassment, humiliation, damage to her reputation, emotional distress, undue stress and anxiety, loss of enjoyment of life; and incurred attorneys' fees and expenses.

43.   Defendant acted willfully and maliciously or with reckless indifference to Plaintiff's protected rights.

## Causes of Action

*Discrimination in Violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended by the Pregnancy Discrimination Act ("PDA").*

44.   Plaintiff incorporates by reference all preceding Paragraphs as if fully set forth in full herein.

45.   The Plaintiff was discriminated against because of her sex and pregnancy in violation of Title VII and Pregnancy Discrimination Act.

46.   The Plaintiff was subjected to harassment on account of her sex and pregnancy; such harassment created a hostile work environment.

47.   Plaintiff did not appropriately handle the complaints of gender and pregnancy discrimination from the Plaintiff.

48.   Defendant acted with malice and/or reckless indifference toward the Plaintiff.

49.   Defendant's conduct harmed and caused damage to Ms. Davis.

50. Based upon the conduct described in this Complaint, Defendant is liable for unlawful gender and pregnancy discrimination in violation of the Title VII and the Pregnancy Discrimination Act.

*Retaliation in Violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended by the Pregnancy Discrimination Act ("PDA").*

51. Plaintiff incorporates by reference all of the preceding paragraphs of the Complaint.

52. Based on the conduct described in this Complaint, Defendant is liable for violations of Title VII's anti-retaliation provisions.

53. Defendant's retaliatory conduct described in this Complaint was substantially motivated by Ms. Davis' gender and pregnancy and her opposition to unlawful conduct.

54. The retaliation against Ms. Davis was intentional and supported by direct evidence, circumstantial evidence, and other persuasive proof.

55. Defendant's retaliatory treatment of Ms. Davis was intentional and demonstrates reckless indifference to her legally protected rights.

56. Defendant's conduct has harmed and caused damage to Ms. Davis.

**Relief Requested**

Ms. Davis respectfully requests:

57. That process issue and be served upon Defendant, and that it be directed to answer this Complaint within the time period prescribed by the law;

58. That this case be set for trial and that a jury be empaneled to hear and decide the merits and damages;

59. Monetary award of damages for back pay, front pay, and all other available economic relief under Title VII and the PDA.

60. That Ms. Davis be awarded judgment and compensatory damages, including but not limited to back pay, front pay, and damages for embarrassment, humiliation, mental anguish and stress, and outrage in an amount to exceed $750,000.00;

61. That Ms. Davis be awarded punitive damages in an amount to be determined at trial.

62. That Ms. Davis be awarded attorneys' fees and expenses;

63. That Ms. Davis be awarded pre-judgment interest;

64. That all costs be taxed against Defendants; and

65. That Ms. Davis be awarded such other and further legal or equitable relief to which she may be entitled.

Respectfully Submitted,

/s Brian C. Winfrey
Brian Winfrey, TN Bar No. 02576
MORGAN & MORGAN
613 Woodland St.
Nashville, TN 37206
(615) 601-1276
brian@thewinfreyfirm.com